# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JESSICA ORTIZ**,

    Plaintiff,

v.                                                                         No: 1:18-cv-00636-RB-KK

**THE HARTFORD**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

After making long-term disability (LTD) payments for two years, Defendant Hartford Life and Accident Insurance Co. (Hartford) began a formal assessment into whether it should continue disbursing benefits to Plaintiff Jessica Ortiz (Ortiz). Hartford evaluated her medical record and determined that Ortiz was not disabled under the terms of her employer plan, and therefore, it would no longer pay LTD benefits. As a result of Hartford terminating these benefits, Oritz seeks to recover under the Employee Retirement Income Security Act of 1974 (ERISA). In this Memorandum Opinion and Order, the Court takes up Hartford's Motion for Summary Judgment against Ortiz's claims. (Doc. 19.) Given that employers have flexibility to define the terms of their benefits programs and independent doctors corroborated Hartford's findings on appeal, the Court will grant Hartford's Motion for Summary Judgment.

**I.  Background and Administrative Record**

Ortiz worked at T-Mobile USA, Inc. (T-Mobile) for years prior to her disability, which began in November 2013. (Doc. 1 (Compl.) ¶ 2.) T-Mobile established a plan to pay LTD benefits to employees under ERISA. (Administrative Record[1] (AR) at 31, 32.) T-Mobile named Hartford "as the claims fiduciary for benefits provided under the Policy" and granted it "full discretion and

---

[1] Document 25-1 comprises the ERISA Administrative Record. (*See* Doc. 25-1.)

authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." (AR at 31.) Under the plan, disability was defined as an inability to perform duties of the specific role for 24-months. (AR at 21.) After that period, to continue receiving disability payments, the individual needed to show an inability to perform "Any Occupation." (*Id.*) This means "any occupation for which [an individual is] qualified by education, training or experience" and has a greater earnings potential than the indexed amount.[2] (*Id.*)

Ortiz stopped working after November 24, 2013, due to pregnancy and hyperemesis. (Compl. ¶¶ 2, 7.) In addition, Ortiz suffered from "major depressive disorder, degenerative joint disease, fibromyalgia, cervical radiculopathy, lumbar radiculopathy, and disabling physical effects." (*Id.* ¶ 2.) As a result, she began receiving LTD payments from Hartford starting February 22, 2014. (Compl. ¶¶ 2–3.) In May 2016, Ortiz saw Dr. Eximena Patricia Galarza-Rios. (AR at 188.) While Dr. Galarza-Rios found that she suffered from "weight loss" and "pain due to fibromyalgia," she "observed to appear healthy and in no acute distress." (*Id.*)

At all times prior to the disability, "Plaintiff obtained and continued her employment in reliance upon . . . disability income insurance benefits in the event she became disabled and became insured under this LTD policy effective [June 1, 2013]." (Compl. ¶ 6.) Ortiz contends that she "provided sufficient proof of loss, medical evidence, health history, and other relevant, necessary, and material evidence in support of the said claim, including releases for the Defendant to obtain information from medical and other sources . . . ." (*Id.* ¶ 3.) Yet Hartford started an investigation into Ortiz's collection of LTD benefits under the *any occupation* definition because after 24 months, beneficiaries must be "totally disabled" to continue the program. (AR at 244–45.) After evaluating evidence compiled from Ortiz's personal physician and a behavioral case

---

[2] The indexed amount that is part of the definition is not at issue in this case.

manager's independent psychiatric evaluation, Hartford determined on January 20, 2016, that Ortiz was "not [d]isabled from [a]ny [occupation] under the terms of the policy." (AR at 77–79.)

Ortiz appealed Hartford's determination. (AR at 1163–65.) Hartford referred the case to the University Disability Consortium (UDC) for independent evaluation. (AR at 420–21.) Three doctors separately reviewed the record, which included Dr. Galarza-Rios's review. (AR at 387–412.) After thorough assessment, Dr. Jennifer Wisdom-Schepers (AR at 397), Dr. Sara Kramer (AR at 403), and Dr. Desmond Ebanks (AR at 411) each concluded that Ortiz was not disabled under the plan definition. Given the three independent medical reports, Hartford denied Ortiz's appeal for LTD benefits on September 6, 2016. (Compl. ¶ 10.) In an unrelated proceeding, Ortiz applied for and received a favorable administrative decision for Social Security Disability Insurance Benefits on July 6, 2017. (*Id.* ¶ 8.)

Nevertheless, Ortiz filed this lawsuit on July 5, 2018. She claims that because of the "arbitrary and capricious . . . refusal of the Defendant to pay [her] disability benefits pursuant to the subject plan, [she] has suffered financial loss and hardship . . . ." (*Id.* ¶ 11.)

## II. Legal Standard

Under the summary judgment standard, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (reiterating the standard). A "genuine" issue arises when "a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citation omitted). And a material fact "is essential to the proper disposition of the claim." *Id.* (citation omitted). In assessing motions for summary judgment, the Court takes all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party passes this initial hurdle, "the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine triable issue." *Johnson v. City of Roswell*, 752 F. App'x 646, 649 (10th Cir. 2018) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)).

Typically, the moving party may employ "depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). But in ERISA cases, "summary judgment is merely a vehicle for deciding the case . . . ." *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013) (quoting *LaAsmar v. Phelps Dodge Corp. Life, Accident Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010)). Determining whether an employee is eligible for benefits "is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Id.* (internal quotation marks and citation omitted).

### III. Analysis

Ortiz's ERISA claim seeks to recover benefits and to enforce the terms of the T-Mobile employer plan. *See* 29 U.S.C. § 1132(a)(1)(B). When a benefits plan grants discretion to the administrator, courts will review its eligibility determinations under the "arbitrary and capricious" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989) (citations omitted). As long as the decision to end benefit payments "was reasonable and made in good faith," the Court will defer to the administrator. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124,

4

1133–34 (10th Cir. 2011) (internal quotation marks and citations omitted). A reasonable decision is based on substantial evidence, which is "more than a scintilla but less than a preponderance." *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.3d 377, 382 (10th Cir. 1992) (quotation omitted). In reviewing the case, administrators "cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement and when they have little or no evidence in the record to refute the theory." *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004) (citation omitted). And when a court looks at this determination, it "cannot go beyond the administrative record." *Id.* at 381.

> **a. The administrative record shows that Ortiz is not disabled under the *any occupation* definition of the benefits plan.**

In its Motion for Summary Judgment, Defendant Hartford states that substantial evidence existed to justify ending Ortiz's LTD benefits under the *any occupation* standard. (Doc. 19 at 16–17.) Specifically, Defendant contends that the "clinical evidence and the vocational evidence showed that Ortiz was able to perform the duties of several occupations after applying accommodations for Ortiz's physical conditions." (*Id.* at 18.) Yet Ortiz argues in response that she was diagnosed with and suffered from severe fibromyalgia. (Doc. 20 at 8.) The condition "has continued unabated and Ms. Ortiz continues to have generalized aches and pain, which limit her functionality." (*Id.* at 10.)

The Court finds Defendant's argument more compelling. Hartford fairly and thoroughly evaluated Ortiz's medical history at the end of the two-year period under the *any occupation* standard. Defendant produced its Employability Analysis Report (EAR) based on information from Ortiz's physician, Dr. Galarza-Rios, which found that despite Ortiz's multiple ailments, she could perform a variety of tasks. (AR at 1248.) Specifically, the EAR found that Ortiz could "sit, stand, and walk each 4 hours a day; occasionally lift/carry up to 10lbs.; never climb, balance, stoop,

kneel, crouch, crawl; occasionally drive and handle; frequently reach at all levels, finger, and feel." (AR at 1248.) The analysis rendered three positions that were a match; 11 that were a good fit, and 21 that were fair. (AR at 1249.) Based on these tasks, it determined that Ortiz could perform any number of jobs. The best-match positions included: case aide, referral clerk, and gate guard. (AR at 1249.) The report found that Ortiz "possesses and acquired [skills] through her work experiences" that would allow her to perform these roles "with limited training and/or on the job learning." (AR at 1249.) And it concluded that "[a]ll of the selected occupations exist in reasonable numbers in the national economy, can be performed with the combination of sitting, standing, walking, and lifting/carrying reported by Dr. Galarza-Rios, and exceed the required earning potential . . . ." (AR at 1249.)

On appeal, three doctors independently verified that Ortiz suffered no disability. After a thorough assessment, Dr. Jennifer Wisdom-Schepers summarized her findings as follows: "More likely than not, there are no psychiatric limitations or restrictions based on reasonable medical certainty." (AR at 397.) Dr. Sara Kramer concluded that a disability claim was "not supported by the records provide[d] for my review and my discussion with Dr. Rios the treating physician." (AR at 403.) And Dr. Desmond Ebanks determined that Ortiz's obesity "is not an impairing condition and the record lacks other support for the claim of impairment. Although the claimant reports chronic recurrent vomiting to varying degrees, there is no evidence in the record to support that the vomiting was of a severity to preclude occupational functioning." (AR at 411.) Each independent evaluator made clear that despite Ortiz's physical limitations, she did not meet the disability criteria under the plan.

Ortiz argues that the fibromyalgia review from her personal physician, Dr. Galarza-Rios, should carry additional weight before the Court. Yet the three independent UDC doctors included

Dr. Galarza-Rios's assessment in their reports and still found that no disability existed. Moreover, the Tenth Circuit has held that the conflicting opinion of the primary doctor is "not, in and of itself, a basis for reversal." *Meraou v. Williams Co. Long Term Disability Plan*, 221 F. App'x 696, 702 (10th Cir. 2007) (citations omitted); *see also Black & Decker Plan v. Nord*, 583 U.S. 822, 834 (2003) ("But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician . . . ."). While evidence gathered by the primary physician indubitably plays a role in an independent evaluation, it is afforded no special consideration. Ortiz's own physician listed the activities she could perform. First Hartford and then three independent physicians evaluated that analysis and reviewed the evidence to determine that Ortiz could hold a variety of different jobs. As a result of Ortiz failing to show legal error, the Court must find that she does not meet the *any occupation* disability definition in the employer's plan.

### b. The Court's analysis is limited to the administrative record; it need not consider the social security decision.

Ortiz further contends that Hartford "could not have made a fair, reasoned and unbiased decision without taking into account . . . the social security decision of July 7, 2017[,] finding the claimant disabled." (Doc. 20 at 14 (capitalization omitted).) The administrator's decision must be reasonable and cannot ignore medical evidence favoring the beneficiary, but the administrator need not defer to a social security decision. *Williams v. Metro. Life Ins. Co.*, 459 F. App'x 719, 729 (10th Cir. 2012).

Here, the ERISA decision occurred approximately one year before the social security judgment. (Compl. ¶ 8.) When the administrator's decision occurs prior to the social security disability decision, it cannot take the latter information into account. *Menge v. AT & T, Inc.*, 595 F. App'x 811, 815 (10th Cir. 2014) ("[T]he Social Security Administration awarded [plaintiff]

7

disability-insurance benefits . . . . But [plaintiff's] social-security award did not occur until ten months after the [administrator] denied his appeal. Thus, the award could not even have been considered . . . as evidence of a disability . . . ."); *see also Nelson v. Aetna Life Ins. Co.*, 568 F. App'x 615, 620 (10th Cir. 2014) ("Most importantly, the SSA decision was not in existence at the time of Aetna's STD decision and was not issued until more than a year later. [The Supreme Court has said] nothing about supplementing an ERISA administrative record with an SSA decision issued long after the claim administrator has denied a claim."). Nevertheless, a contrary social security decision should not affect an administrator's decision under ERISA law. *Liebel v. Aetna Life Ins. Co.*, 595 F. App'x 755, 764 (10th Cir. 2014) ("Under the circumstances, the discrepancy between the SSA determination . . . and Aetna's later decision, based on a greatly augmented medical record unskewed by special deference to evidence . . . does not bespeak arbitrary and capricious conduct under the standard governing our review.").

Ortiz states that Defendant ignored the social security decision to avoid the stark truth that the judgment favors her. (Doc. 20 at 11.) Yet the analysis and conclusions drawn in the later-decided social security claim are of no concern. The Tenth Circuit has consistently held that when social security decisions arise after the close of the ERISA record, there is nothing for the administrator to assess, and the administrator needn't reevaluate the ERISA claim. This Court must only look at the administrative record, weighing both the evidence for and against Ortiz.

Further, it is possible that in using the same body of evidence the administrator and the social security judge could reach divergent conclusions. The Supreme Court has found that "[i]n contrast to the obligatory, nationwide Social Security program, '[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.'" *Black & Decker Disability Plan v.*

8

*Nord*, 538 U.S. 822, 833 (2003) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)). Social security and ERISA operate on two separate planes, with divergent legal standards. That is, employers have "leeway to design disability and other welfare plans as they see fit." *Id.*

In the end, the weight of evidence suggests that Ortiz is not disabled under the *any occupation* standard set forth in the employer plan. As a result, Hartford's decision to end the LTD benefits was supported by substantial evidence.

**THEREFORE**,

**IT IS ORDERED** that Defendant Hartford's Motion for Summary Judgment (Doc. 19) is **GRANTED**;

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**